1  SEYFARTH SHAW LLP
   Jamie C. Pollaci (SBN 244659)
2  jpollaci@seyfarth.com
   Eric W. May (SBN 264733)
3  emay@seyfarth.com
   2029 Century Park East, Suite 3500
4  Los Angeles, California 90067-3021
   Telephone:   (310) 277-7200
5  Facsimile:    (310) 201-5219

6  Attorneys for Defendant
   DS SERVICES OF AMERICA, INC.

7

8

9             UNITED STATES DISTRICT COURT

10    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12 | CARLOS A. SESTI,                      | Case No.   2:21-cv-1263
13 |              Plaintiff,               | **DEFENDANT DS SERVICES OF AMERICA, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**
14 |      v.                               |
15 | DS SERVICES OF AMERICA, INC., a       |
   | Delaware corporation; and DOES 1      | Removed from the Superior Court of California, County of Los Angeles
16 | through 50, inclusive,                | Case No. 20STCV46994
17 |              Defendants.              |
18 |                                       | [*Filed concurrently with the Declarations of Tamara Leary and Eric W. May; Certification as to Interested Parties; Civil Cover Sheet; and Proof of Service*]
19 |                                       |
20 |                                       |
21 |                                       | Complaint Filed:    December 2, 2020
22 |                                       | Trial Date:           None Set

23

24

25

26

27

28

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant DS Services of America, Inc. ("Defendant") files this Notice of Removal, pursuant to 28 United States Code sections 1332, 1441, and 1446, to effectuate the removal of the above-captioned action from the Superior Court for the County of Los Angeles to the United States District Court for the Central District of California, Western Division. This Court has original jurisdiction over this action based on diversity of citizenship under 28 United States Code section 1332. Removal is proper for the following reasons:

## I.     PLEADINGS AND PROCEEDINGS TO DATE

1.     On December 2, 2020, Plaintiff Carlos A. Sesti ("Plaintiff"), an individual, filed an unverified Complaint For Damages ("Complaint") in the Superior Court of California for the County of Los Angeles, Case No. 20STCV45994. In compliance with 28 United States Code section 1446(a), true and correct copies of the summons, Complaint, and all other court documents served on Defendant are attached hereto as **Exhibit 1**.

2.     The Complaint alleges two causes of action against Defendant for (1) age discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't. Code section 12900, *et seq*., (2) failure to prevent discrimination on the basis of age in violation of the FEHA. (*See generally*, Exh. 1.)

3.     On January 12, 2021, Plaintiff served Defendant's agent for service of process with the Summons, Complaint, and all of the court documents attached hereto as **Exhibit 1**.

4.     On February 8, 2021, Defendant timely filed its Answer to Plaintiff's Complaint. A true and correct copy of Defendant's Answer to the Complaint is attached hereto as **Exhibit 2**.

5.      Defendant has not filed or received any other pleadings or papers, other than the documents described in Exhibits 1-2.  (Declaration of Eric W. May ("May Decl."), ¶ 5.)

6.      The Superior Court scheduled a Case Management Conference for 8:30 a.m. in Department 30 on May 3, 2021.  (Exh. 1 at p. 34.)  Other than the Case Management Conference, there are no other proceedings scheduled in the Superior Court.

## II.      TIMELINESS OF REMOVAL

7.      The time for filing a Notice of Removal does not begin to run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable."  28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

8.      The service of process which triggers the 30-day period to remove is governed by state law.  *City of Clarksdale v. BellSouth Telecommunications, Inc*., 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

9.      This Notice of Removal is timely since it is filed within thirty (30) days of the service of the Summons and Complaint, which was on January 12, 2021.  28 U.S.C. § 1446(b)(1); Cal. Civ. Proc. Code §415.10; *see also* Exhs. 1-2.

## III.      <u>DIVERSITY JURISDICTION</u>

10.      This Court has original jurisdiction of this action under 28 United States Code section 1332(a)(1).  As set forth below, this action is removable pursuant to 28 United States Code. section 1441(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

A.     **Plaintiff's Citizenship**

11.     Plaintiff is, and at all times since the commencement of this action has been, a resident of the State of California. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *Gonzalez v. Starwood Hotels*, 2016 WL 1611576, at *2 (C.D. Cal. April 21, 2016). A party's residence is *prima facie* evidence of domicile. *Kantor*, 704 F.2d at 1090 (a party's residence is prima facie evidence of his or her domicile); *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Golub v. Wells Fargo Bank, N.A.*, 2014 WL 997336, at *1 (C.D. Cal. March 13, 2014) (plaintiff's uncontroverted claim of residence in complaint sufficient to establish citizenship for purposes of diversity). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986)).

12.     Plaintiff alleges in the Complaint that he was a "resident[] of Los Angeles County … at all times relevant herein." (Exh. 1, Complaint, ¶ 1.) Specifically, Plaintiff alleges that "[a]t all relevant times herein, Plaintiff resided in Chino Hills, California and reported to Defendant's work site located at 4510 Azusa Canyon Road, Irwindale, California 91706." (Exh. 1, Complaint, ¶ 4.)

13.     Moreover, throughout Plaintiff's employment with Defendant, Plaintiff listed his home address in Chino Hills, California (Los Angeles County) as his residence for the purposes of his personnel file, payroll checks, and tax withholdings, thereby demonstrating "an intent to remain" in California and establishing Plaintiff's domicile in California. (Declaration of Tamara Leary ("Leary Decl."), ¶ 5.)

14.     Therefore, Plaintiff is, and at all times since the commencement of this action has been, a resident and citizen of the State of California.

**B.** <u>Defendant DS Services of America, Inc.'s Citizenship</u>

15.    Defendant is now, and was at the time of the filing of this action, a citizen of a State other than California within the meaning of 28 United States Code section 1332(c)(1).  Section 1332(c)(1) states that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business…"

16.    Defendant is now, and at all times since this action commenced has been, a corporation organized under the laws of the State of Delaware.  (Leary Decl., ¶ 4).  Defendant is a citizen of the State of Delaware.

17.    The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010).  Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis.  *Id.* ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

18.    Under the "nerve center" test, Georgia is Defendant's principal place of business.  Defendant's corporate headquarters is located in Atlanta, Georgia, from which Defendant directs its operations, maintains senior management, and otherwise conducts tasks giving rise to its operations in other states.  (Leary Decl., ¶ 4.)  From its headquarters in Georgia, Defendant conducts its core executive and administrative operations, including but not limited to, those relating to company-wide policies and procedures, human resources, legal affairs, marketing, tax, benefits, information technology, and finance.  (Leary Decl., ¶ 4).  The bulk of Defendant's corporate activity is centered in Georgia, in that it is the location of the majority of the corporation's administrative and managerial activities, and the primary, permanent base of its operations.  (Leary Decl., ¶ 4).

19.    As demonstrated above, Defendant is a citizen of Delaware and Georgia.

20.    Because Plaintiff is not a citizen of either state of which Defendant is a citizen, there is complete diversity of citizenship pursuant to 28 United States Code section 1332(a) and diversity as required by 28 United States Code section 1332(d).

21.    The presence of Doe defendants in this case has no bearing on diversity with respect to removal.  28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

## IV.    THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.00

22.    While Defendant denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because it is more likely than not that the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 403-404 (9th Cir. 1996) ("[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount.") (internal quotations and citations omitted).

23.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).  When the amount in controversy is not apparent from the face of the complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

24.    In determining the amount in controversy, the aggregate of general damages, special damages, punitive damages, and attorneys' fees are properly considered for purposes of removal on grounds of diversity jurisdiction.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n,* 325 F.2d 785, 787

5

(9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Conrad Assoc.'s v. Hartford Accident & Ind. Co.,* 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages).

25.    Here, considered together, the general and special damages sought by Plaintiff, along with the attorneys' fees and punitive damages that might be awarded if Plaintiff prevails, establish by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs, as required by 28 United States Code section 1332(a).

## A.    Alleged Lost Wages and Benefits

26.    Plaintiff alleges that his employment was terminated on April 10, 2020. (Exh. 1, Complaint, ¶ 4.)  Plaintiff also alleges that he "has sustained and continues to sustain substantial losses in earnings and other employment benefits[.]"  (Exh. 1, Complaint ¶¶ 16, 25.)

27.    At the time of his termination, Plaintiff earned an hourly wage of approximately $29.20, in addition to the value of benefits he received from Defendant.[1] (Leary Decl., ¶ 5.)  Plaintiff also regularly worked approximately 45 hours per week (on average) during the last three months of his employment.  (Leary Decl., ¶ 5.)

28.    Based on the 2019 Judicial Caseload Profile for the Central District of California obtained from the United States District Court's official website (https://www.uscourts.gov/sites/default/files/data_tables/stfj_c5_630.2019.xlsx), the median time from filing to trial in a civil matter is 20.6 months.  Even assuming that COVID-19 does not increase this timeline, this case will likely not resolve at trial any

---

[1]    Plaintiff was a commissioned employee, with no hourly base wage, and his rate of pay was recalculated each week based on commissions earned and hours worked.  (Leary Decl., ¶ 5.)  At the time of his termination, Plaintiff's hourly wage was approximately $29.20.  (Leary Decl., ¶ 5.)  This approximate hourly wage was calculated by taking an average of Plaintiff's hourly regular rate of pay (excluding overtime), based on Plaintiff's weekly paystubs from January 3, 2020 through April 3, 2020.

earlier than August 2022 (approximately 20 months from the date the lawsuit was filed). By that time, Plaintiff's alleged lost wages could amount to at least **$141,717.33[2]**, not including damages for lost benefits.  This estimate is conservative.[3]

29.    In addition to back pay, a plaintiff who prevails on a claim for wrongful termination or discriminatory discharge of employment may be entitled to either reinstatement or an award of "front pay" in lieu of reinstatement.  *See, e.g., Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1346 (9th Cir. 1997) (stating that a court has discretion to award front pay in lieu of reinstatement); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (future wages are "at stake" in the litigation and must be considered in assessing amount in controversy); *Secru v. Laboratory Corp. of America*, No. 3:09–cv–0619–LRH–RAM, 2009 WL 3755763, at * 2, n.3 (D. Nev. Nov. 9, 2009) (future lost wages alone can satisfy amount in controversy); *James v. Childtime Childcare, Inc.*, No. Civ. S-06-2676 DFL DAD, 2007 WL 1589543, at *2, n.1 (E.D. Cal. June 1, 2007) (while courts evaluate the amount in controversy at the time of removal, future lost wages are properly considered in that calculation); *see also Crum v. Circus Circuit Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000) (future damages are properly considered in determining amount in controversy).

30.    An award of three years' front pay would entitle Plaintiff to more than **$182,208** in additional recovery.  *See Traxler v. Multnomah Cty.*, 569 F.3d 1007, 1015 (9th Cir. 2010) (upholding district court's decision to award nearly four years' front pay in a wrongful termination suit); *see also Glenn-Davis v. City of Oakland*, No. C 02-2257 SI, 2008 WL 410239, *4 (N.D. Cal. 2008) (finding three years of front pay "appropriate" in a discrimination suit); *Ackerman v. Western Elec. Co., Inc.*, 643 F. Supp. 836, 856

---

[2]    $29.20/hour * 40 hours/week * 52 weeks per year / 12 months per year * 28 months between Plaintiff's termination on April 10, 2020 and estimated August 2022 trial = $141,717.33.

[3]    In 2019, Plaintiff's yearly gross pay was $81,550.08 (or approximately $39.20 per hour assuming a 40-hour workweek), which is exactly $10 per hour *higher* than the gross pay estimated herein for purposes of calculating the amount in controversy.  (Leary Decl., ¶ 5.)

7

(N.D. Cal. 1986) (same).  Thus, Plaintiff's allegations of lost wages alone exceed **$323,925.33**.

## B.    Alleged Emotional Distress

31.    In addition to lost wages, Plaintiff alleges that he "has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish[.]"  (Exh. 1, Complaint ¶¶ 17, 26.)  Plaintiff also seeks to recover "general damages" and "special damages[.]"  (Exh. 1, Complaint, Prayer For Relief ¶¶ 1-2.)

32.    In cases alleging discriminatory discharge, the emotional distress damages alone often exceed the $75,000 amount in controversy requirement.  *See, e.g.*, *Aguilar v. LA Metro BP Holding Co., LLC, et al.*, No. BC651278, 2018 WL 7286562 (Los Angeles Sup. Ct., Nov. 20, 2018) (jury awarded $265,000 in general damages for claims of discrimination, harassment, retaliation, failure to prevent harassment and discrimination, and wrongful termination); *Meadowcroft, et al. v. Silverton Partners, Inc., et al.*, No. BC633239, 2018 WL 7635472 (Los Angeles Sup. Ct., Sep. 11, 2018) (jury awarded two plaintiffs $2.5 million each in damages for claims of harassment, retaliation, wrongful termination and failure to prevent harassment); *Silverman v. Stuart F. Cooper Inc.*, No. BC467464, 2013 WL 5820140 (Los Angeles Sup. Ct., July 19, 2013) (jury awarded $157,001 for emotional distress damages in discrimination case); *Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*, No. BC484335, 2013 WL 7852947 (Los Angeles Sup. Ct., Oct. 25, 2012) (award of $1,250,000 for pain and suffering to employee for disability discrimination action); *Aboulafia v. GACN Inc.*, No. BC469940, 2013 WL 8115991 (Los Angeles Sup. Ct., Sept. 23, 2011) (pain and suffering award of $250,000, $250,000, $250,000, and $250,267 to four employees in discrimination action); *Welch v. Ivy Hill Corp.*, No. BC414667, 2011 WL 3293268 (Los Angeles Sup. Ct., Mar. 8, 2011) (award of $1,270,000 in pain and suffering to employee in a discrimination action); *Leimandt v. Mega RV Corp.*, No. 30-2010-00388086, 2011 WL 2912831 (Orange County Sup. Ct., Feb. 4, 2011) (jury awarded $385,000 in pain and suffering to employee in a discrimination case); *Kell v. AutoZone Inc.*, No. 07AS04375, 2010 WL 1347162

8

(Sacramento Sup. Ct., Jan. 21, 2010) (jury awarded $1,368,675 in damages for wrongful termination and retaliation claims); *see also Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) (recognizing that "emotional distress damages in a successful employment discrimination case may be substantial"); *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) ("In determining the amount in controversy, the district court properly considered … emotional distress damage awards in similar age discrimination cases …."). These awards demonstrate that, for diversity purposes, the value of Plaintiff's claimed emotional distress damages exceeds the $75,000 amount in controversy requirement on its own.

## C. <u>Alleged Punitive Damages</u>

33. Plaintiff also seeks punitive damages against Defendant. (Exh. 1, Complaint, ¶¶ 18, 27 & Prayer for Relief ¶ 3.) For purposes of calculating the amount in controversy, the Court must assume that Plaintiff will prevail on his claim for punitive damages. *See Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449-50 (S.D. Cal. 1995) (amount in controversy includes potential recovery of punitive damages award).

34. Verdicts in similar cases show that, when awarded, punitive damages in discrimination and wrongful termination cases typically exceed $75,000. *See Aguilar,* 2018 WL 7286562, *supra* (jury awarded $145,000 in punitive damages for claims of discrimination, harassment, retaliation, failure to prevent harassment and discrimination, and wrongful termination); *Meadowcroft,* 2018 WL 7635472, *supra* (jury awarded plaintiffs $3 million each in punitive damages for claims of harassment, retaliation, wrongful termination and failure to prevent harassment); *Olivas-Dean v. American Meizhou Dongpo Group, Inc., et al.*, No BC581538, 2017 WL 3531353 (Los Angeles Sup. Ct., April 24, 2017) ($250,000 awarded in punitive damages for harassment, discrimination, retaliation, wrongful termination). *Aboulida v. GACN Inc.*, No. BC469940, 2013 WL 8115991 (Los Angeles Sup. Ct., Dec. 17, 2013) (award of

$1,000,000 in punitive damages in discrimination case); *Ward v. Cadbury Schweppes Bottling Grp.*, No. 09CV03279(DMG), 2011 WL 7447633 (C.D. Cal., Dec. 7, 2011) (jury awarded $9,687,400 in punitive damages to six employees in discrimination and retaliation action).

### D.    Alleged Attorneys' Fees

35.    Plaintiff also alleges that he "has incurred and continues to incur legal expenses and attorney fees," and he seeks to recover his attorneys' fees and costs. (Exh. 1, Complaint, ¶¶ 19, 28 & Prayer for Relief ¶¶ 5-6.)  Requests for attorneys' fees are properly considered in calculating the amount in controversy for purposes of removal on grounds of diversity jurisdiction.  *See Galt*, *supra*, 142 F.3d at 1156 (statutory attorneys' fees included in amount in controversy, regardless whether fees discretionary or mandatory). The amount of attorneys' fees for purposes of amount in controversy calculations is the expected reasonable attorneys' fees ***through trial***.  *Fritsch v. Swift Transp.*, 899 F. 3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.").  The reasonable amount of attorneys' fees may be based upon fee awards in similar cases.  *Lyon v. W.W. Grainger Inc.*, 2010 WL 1753194, at *5 (N.D. Cal. Apr. 29, 2010) ("Defendant's use of similar cases to estimate the cost of attorney's fees is sufficient to establish that its estimate is more likely than not correct."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (relying on evidence of fee awards in similar cases to determine a reasonable estimate of attorneys' fees).

36.    Verdicts in similar cases show that attorneys' fees in discrimination and wrongful termination cases typically exceed $75,000.  *See Begazo v. Passages Silver Strand, LLC*, No. BC595150, 2017 WL 2402841 (Los Angeles Sup. Ct., Mar. 3, 2017) (court awarded $375,568 in attorneys' fees to Plaintiff after prevailing on claims for retaliation and wrongful termination); *Jaffe v. UHS-Corona Inc.,* No. RIC-543130, 2013 WL 8509821 (Riverside Sup. Ct., May 7, 2013) (court awarded $169,112 in attorneys' fees and costs in wrongful termination action after jury verdict for plaintiff); *Mootz v.*

*State of California*, Dkt. No. 05AS04214, 2008 WL 2414817 (Sacramento Sup. Ct., March 27, 2008) (attorneys' fees awarded of $442,400 for plaintiff claiming retaliation for complaining about harassment); *Denenberg v. California Dep't of Trans.*, 2007 WL 2827715 (San Diego Sup. Ct., Sept. 14, 2006) (attorneys' fees award of $490,000 in case alleging discrimination, sexual harassment, and retaliation); *McMillan v. City of Los Angeles*, 2005 WL 3729094 (Los Angeles Sup. Ct., Mar. 21, 2005) (attorneys' fees award of $504,926 in case alleging discrimination and retaliation for filing lawsuit to redress discrimination); *Gallegos v. Los Angeles City College*, 2003 WL 23336379 (Los Angeles Sup. Ct., Oct. 16, 2003) (attorneys' fees award of $159,277 for claim of wrongful discharge).

37.    While Defendant denies any liability as to Plaintiff's claims, for each of the foregoing reasons, it is "more likely than not" that the amount in controversy exceeds $75,000, exclusive of interest and costs, as required by 28 United States Code section 1332(a).

## V.    VENUE

38.    Venue lies in the United States District Court, Central District of California, Western Division, pursuant to 28 United States Code sections 84(c)(2), 1441 and 1446(a).  Plaintiff originally filed this action in the Superior Court of the State of California, County of Los Angeles, which is located within the jurisdiction of the United States District Court, Central District of California, Western Division.  Thus, without waiving Defendant's right to challenge, among other things, personal jurisdiction and/or venue by way of a motion or otherwise, venue lies in this Court pursuant to 28 United States Code sections 1391(a) and 1441(a).

## VI.    NOTICE OF REMOVAL

39.    Pursuant to 28 United States Code section 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Los Angeles, in the state court action.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT
67633221v.3

40.     This Notice of Removal will be served on counsel for Plaintiff.  A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

41.     In compliance with 28 United States Code section 1446(a), true and correct copies of all process, pleadings, discovery, and orders filed and/or served in this action are attached as **Exhibit 1** and **Exhibit 2**.

## VII.    PRAYER FOR REMOVAL

WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, for the County of Los Angeles, to the United States District Court for the Central District of California, Western Division.

DATED: February 11, 2021                SEYFARTH SHAW LLP


By: */s/ Eric W. May*
Jamie C. Pollaci
Eric W. May
Attorneys for Defendant
DS SERVICES OF AMERICA, INC.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT
67633221v.3

**PROOF OF SERVICE**

STATE OF CALIFORNIA                     )
                                        )    SS
COUNTY OF                               )

    I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 2029 Century Park East, Suite 3500, Los Angeles, California 90067-3021.  On February 11, 2021, I served the within document(s):

    DEFENDANT DS SERVICES OF AMERICA, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below.

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐  by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Los Angeles, California, addressed as set forth below.

☐  by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

| | |
|---|---|
| Boris Koron | Phone:  818-514-1013 |
| Daniel J. Podolsky | Fax:     818-514-1016 |
| KORDON & PODOLSKY, LLP | Email:  bkoron@koronpodolsky.com |
| 18801 Ventura Blvd., Ste. 208 | dpodolsky@koronpodolsky.com |
| Tarzana, CA  91356 | |

*Attorneys for Plaintiff*
CARLOS A. SESTI

    I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on February 11, 2021, at Los Angeles, California.


_____
                     Rebecca Garner

68109365v.1